**KENTLAND COAL & COKE COMPANY, Appellant,**

v.

**Burke BLANKENSHIP et al., Appellees.**

Court of Appeals of Kentucky.

March 29, 1957.

Hobson & Scott, John M. Stephens, Pikeville, for appellant.

Wine & Venters, Pikeville, for appellees.

STANLEY, Commissioner.

Title to a relatively small portion of a large mineral tract owned by the appellant, Kentland Coal & Coke Company, depends upon the construction to be given a deed executed to its remote vendor on May 14, 1888. The instrument is a printed form with the blanks filled in with ink which has become a faded green, but legible enough in its more material parts. The question is whether the deed conveyed to the grantee named a fee simple title or a life estate with remainder to her children or descendants. The circuit court construed the instrument as conveying only a life estate in the named grantee.

In reproducing the original deed we italicize the parts written in the blank spaces with a pen.

"This Deed of Conveyance, made and entered into this *the 14th* day of *May, 1888,* between *Daniel B. Estep & Lydia B. Estep. Both of the County of Pike and State of Ky.,* party of the first part, and *Nancy J. Blankenship and her heirs after her death of Pike Co., Ky.* party of the second part, witnesseth: that the said party of the first part, for and in consideration of the sum of *one hundred and Eight dollars and Forty Cents in hand paid and the sum of Seventeen dollars and Sixty cents to be paid unto the said Lydia B. Estep* do hereby sell and convey to the party of the second part *and her* heirs and assigns\*, the following described property, to-wit:

[Description of 150 acres omitted.]

"To have and to hold the same, together with all the appurtenances thereunto belonging, unto the party of the second *Except the walnut trees and logs sold to J. H. Valley,* part,/*and her* heirs and assigns\* forever.

And the said party of the first part hereby covenants with the said party of the second part, that *they* will warrant *all* the title *they have* to the property hereby conveyed unto said party of the second part and h*er* heirs and assigns\* forever. ~~A lien is retained upon the property hereby conveyed, as security for the payment of the said unpaid purchase money.~~

"In Testimony whereof, the party of the first part, ha*th* hereunto subscribed *their* name*s*, the day and year aforesaid.

> *his*
> "Signed  Daniel X B. Estep.
> *mark*
> *her*
> Lydia B. X Estep,
> mark"

The handwriting seems to be that of R. F. Blankenship, the deputy county clerk who certified the acknowledgment; so we have a laymen's deed with the not unusual ambiguity.

Our statute KRS 381.060(1), which seems to have originated in 1796, is quoted here for ready reference, namely:

> "Unless a different purpose appear by express word or necessary inference, every estate in land created by deed or will, without words of inheritance, shall be deemed a fee simple."

The question then is resolved into determining whether, having regard for the entire instrument, the "unless" condition prevails. The circuit court brought to bear on the question two subsequent deeds which he regarded as showing that the grantees considered the original deed as conveying less than a fee and, therefore, applied the rule of ascertaining the intention of the parties to a contract by adopting their own practical construction of it. The judgment is that the deed "conveyed to Nancy J. Blankenship only a life estate and the remainder after her death was conveyed to her heirs," the plaintiffs in the case. The Kentland Company appeals and maintains the deed conveyed a fee simple title to Nancy J. Blankenship, from whom it derived such title.

█ It is to be noticed that the peculiar phrase, "her heirs after her death," which lends support to the idea that "heirs" was used in the sense of "children," is in the paragraph reciting the parties to the instrument, while the granting and habendum clauses are in the usual language (part of the printed form) "heirs and assigns," which are words of limitation, converted by statute, KRS 381.070, into a fee simple estate. The appellees, however, contend that ink lines were drawn through the words "and assigns" in the three clauses (indicated \*). We have examined the original faded writing under magnifying glasses and are unable to see such lines. Although there appears to be a weak, shadowy line through the words "and heirs" in the granting clause, it is not clear enough to authorize us to say that it was an original mark intended to delete the words. The deed was recorded in the clerk's office on July 9, 1888, and the attested or certified copy filed with the petition of the appellees contains the word "assigns" except in the warranty. Doubtless, the ink in the original deed was not faded then. At any rate, the appellant, as remote grantee, had the right to rely on the instrument as recorded. We, therefore, have an instrument in the conventional form conveying the property to the named grantee and her heirs and assigns. This negatives the idea that "heirs after her death" in the original paragraph was used to convey a remainder estate to her children or descendants.

█ The court has many times wrestled with the problem of construing terms in deeds and wills similar to the terms we have in this case; and it is difficult, if not impossible, to logically reconcile all of the opinions and form a simple pattern or comprehensive rule. Of course, the primary object in every case is to deduce and give effect to the intention of the parties as manifested by all the language used in the

instrument itself, construed in accordance with the statutes and general rules of construction. Sower v. Lillard, 207 Ky. 283, 269 S.W. 330; Hays v. Kentucky West Virginia Gas Co., 290 Ky. 174, 160 S.W.2d 376. The difficulty always is in deducing the intention where it is obscurely expressed. Where the terms are contained in a will, the quest is for the intention of one mind, that is, the testator; but where they are contained in a deed or contract, a bilateral instrument executed for a consideration, the court must seek the intention of two or more parties, that is, both the grantor and grantee. In such a case the doubts in relation to the character of title conveyed are resolved in favor of passing the complete title. Kentucky Real Estate Board v. Smith, 272 Ky. 313, 114 S.W.2d 107. We should, therefore, look to the deed cases as more pertinent.

Such cases closer to the present and relied upon by the appellees as supporting their construction of the deed involved are, Combs v. Eversole, 64 S.W. 524, 23 Ky. Law Rep. 932; Eggner v. Hovekamp, 134 Ky. 224, 119 S.W. 818; Hunt v. Hunt, 154 Ky. 679, 159 S.W. 528; Ratliffe v. Ratliffe, 182 Ky. 230, 206 S.W. 478; Hays v. Kentucky W. Va. Gas Co., 290 Ky. 174, 160 S.W.2d 376. The deeds in each of these cases contain expressions or language not found in this Blankenship deed. The demand for reasonable brevity justifies omission of specifically pointing out the differences.

■ The only part of the deed in controversy that tends to indicate an intention to convey the property to the named grantee for life only is contained in the *initial paragraph* identifying "the party of the second part" (singular number) as "Nancy J. Blankenship and her heirs after her death" instead of merely "Nancy J. Blankenship." Both the *granting* and *habendum* clauses of the deed are to the named individual party grantee and "her heirs and assigns." If the addition "heirs at her death" be regarded as indicating a convey-

ance to Mrs. Blankenship and her children rather than be regarded as surplusage, then the granting and habendum provisions of the deed must prevail.

In Lane v. Lane, 106 Ky. 530, 50 S.W. 857, the initial paragraph of a deed recited the grantee as " 'Daniel Lane and his heirs after him, party of the second part.' " But the granting and habendum clauses read, " 'to the party of the second part, his heirs and assigns.' " The similarity with the present deed is apparent. In construing that deed the court said:

"We regard the word 'heirs,' in the clause where it first occurs, as a word of limitation merely, denoting the inheritable quality of the estate conveyed, and not the particular persons who were to take the estate. This is the usual meaning of the word, and it is confessed of its meaning in the remaining clause where it occurs."

In Lawson v. Todd, 129 Ky. 132, 110 S.W. 412, the initial clause of the deed recited that the conveyance was to the grantor's daughter " 'and her bodily heirs after her, parties of the second part.' " The granting and habendum used only the phrase, "parties of the second part."

In construing these deeds under the influence of the statute, now KRS 381.060(1) above quoted, the court held that complete title passed to the named grantee. The latter opinion, which has long been regarded as a leading case, goes quite fully into an analysis of the terms of the instrument and the applicable rules of construction.

We turn to the point that subsequent conveyances of the land by the Blankenships substantiate the construction of the Estep deed that Mrs. Blankenship was conveyed only an estate for life.

On December 13, 1900, W. B. Blankenship and his wife, Nancy J. Blankenship, executed a deed to Ralph A. Hellier of *"all the coal"* on a boundary of some 500 acres which included the tract covered by the deed from Estep to Mrs. Blankenship of

**574**

May 14, 1888. This deed contains a special and not a general warranty of title. The grantors warranted the title "against the claim or claims of any or all persons whatsoever claiming by, through or under them."

On April 23, 1904, in consideration of $11.50 cash, W. B. Blankenship and his wife, Nancy J. Blankenship and Garfield Blankenship deeded a tract which included that in controversy to G. W. Dotson and Pogie Dotson, his wife, *"except the coal on the land."* The sources of the grantors' title, written on the margin, refer to conveyances of four tracts to W. B. Blankenship and one tract (that involved) to Nancy J. Blankenship. The appellees maintain that the fact, proven in evidence, that at the time of this conveyance Garfield was the only child of these parties who had become 21 years of age, shows a recognition by the parties that Nancy's children owned the land in remainder. None of her children were of age when the mineral deed to Hellier was executed in December, 1900. The grantors warranted only the title "to all the property own held (*sic*) W. B. Blankenship." This phrase or limitation was inserted with a caret in the printed form of the deed. It is noticed that the names of all three of the parties grantor are in the handwriting of George H. Taylor, the deputy clerk who took the acknowledgment of Mr. and Mrs. Blankenship. Garfield did not acknowledge the deed.

The appellant, Kentland Coal & Coke Company, through mesne conveyances, has record title to both the mineral and surface of the tract involved.

█ The appellees argue that the absence of a general warranty from these two deeds indicates a recognition that Mrs. Blankenship had only a life estate in the tract involved. It is observed that the original conveyance to her by Estep contained only a special warranty of his title. It seems to us this fact is a more logical reason for these special warranties in the subsequent conveyances than is the inference that Mrs. Blankenship construed the deed

as conveying her only a life estate. It is more consistent with the view that she understood she had no general warranty of title than it is with the view that she had no title to warrant generally. We cannot attach controlling significance to these extrinsic facts.

The judgment is, therefore, reversed.